ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

GEORGE O. HAGEMAN (CABN 332457)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6511
    Fax: (415) 436-7234
    George.Hageman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ESMUN MOYSES MORAL-RAUDALES, <br><br> Defendant. | CASE NO. 3:23-CR-00076 JD <br><br> **MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION** <br><br> **[UNDER SEAL]** <br><br> Date: March 24, 2023 <br> Time: 10:30 a.m. <br> Court: Hon. Lisa J. Cisneros |

## I.    INTRODUCTION

Fentanyl is the leading cause of drug overdose deaths in the United States. One pill with 2mg of fentanyl can kill. Defendant Esmun Moyses Moral-Raudales had more than *eight pounds* of fentanyl, in both blue "M30" pill form and in brick powder form. He weighed it, packaged it, and sold it on the streets of the Tenderloin. He carried a ghost gun as he conducted his business. He stored his drugs in an unassuming house in a residential neighborhood in Oakland. He did all this while on supervised release from a previous federal drug conviction in July 2020.[1] The defendant is both a danger to the community and a significant flight risk. He cannot overcome the presumption that there is no condition or combination of conditions that can secure his appearance before the Court or provide for the safety of the community. Accordingly, the government requests that he be detained pending trial.

## II.    FACTUAL BACKGROUND

On March 7, 2023, a federal grand jury in the Northern District of California returned an indictment charging the defendant with three counts of distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1). Dkt. 1. Count One was for distributing methamphetamine to an undercover officer in the Tenderloin on January 10, 2023. Counts Two and Three were for distributing methamphetamine and fentanyl to an undercover officer in the Tenderloin on February 7, 2023. The substances sold in all three counts tested presumptive positive. Separately, the defendant also sold fentanyl to an undercover officer in the Tenderloin on January 17, 2023—that transaction remains uncharged. The pictures below show the transaction at issue in Count One, which took place at the corner of Golden Gate Avenue and Hyde Street, one block away from the nearest school.

 

---

[1] *See United States v. Esmun Moyses Moral-Raudales*, 3:20-CR-00138 JD (N.D. Cal. July 2, 2020), Dkt. 21.

UNITED STATES' DETENTION MEMO    2
3:23-CR-00076 JD

On March 16, 2023, law enforcement attempted to arrest the defendant after he exited his residence in Oakland. He tossed his backpack and fled. After he was subdued, law enforcement searched his person, his backpack, his vehicle (that he used to commute back and forth from Oakland to his favored selling location in the Tenderloin), and his residence pursuant to a search warrant. On his person, they found 172.9 grams of suspected fentanyl and 52.5 grams of suspected methamphetamine. In his backpack, they found $2931 in cash and a "ghost gun" with 8 bullets in the magazine. In his vehicle, they found 144.8 grams of suspected fentanyl. In his residence, they found 3205 grams of suspected fentanyl in powder form, 185 grams of blue "M30" suspected fentanyl pills, mixing and coloring equipment, and an additional $9140 in cash.



### III.   LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the

evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

Where there is probable cause that a defendant has violated an offense for which a maximum of ten years in prison or more is prescribed in the Controlled Substances Act, courts apply a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). Under this scheme, the burden of production shifts to the defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Even if the defendant rebuts the presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *See id.* (citation omitted).

### IV. ARGUMENT

1. <u>The defendant faces a rebuttable presumption in favor of detention.</u>

The defendant was arrested in actual physical possession of fentanyl and methamphetamine. He is charged with distributing fentanyl and methamphetamine to an undercover officer. Therefore, there is probable cause to believe the defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. As a result, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). As described below, the defendant will be unable to overcome this presumption.

2. <u>The defendant cannot overcome the presumption that he is a flight risk.</u>

UNITED STATES' DETENTION MEMO                 4
3:23-CR-00076 JD

The defendant is a Honduran national.  Though he has a residence in Oakland, he makes frequent trips to Portland, Oregon, having been there for several weeks prior to his arrest despite not being allowed to leave the district without permission.  He commutes to the Tenderloin to sell drugs despite having a stay-away order from the area.  When approached by police, he fled and had to be physically subdued.  The defendant is not tied to one place and clearly has no qualms about traveling where he shouldn't.  Those factors, in themselves, demonstrate a sufficient flight risk.

Additionally, the defendant has shown he possesses the financial means to abscond.  He carried over $12,000 in cash on his person and in his backpack.  The eight pounds of fentanyl found in his residence, in his backpack, and on his person, has tens of thousands of dollars in estimated street value.  With access to those quantities of drugs, it is reasonable to think he has access to additional sources of funding even after the police have seized this particular stash.  It is also reasonable to think that he has connections to networks that may assist him in his flight from court-imposed oversight.  After all, he was *on federal supervised release* at the time of this offense conduct.  That term of supervised release stemmed from a prior felony drug conviction in July 2020, for an offense the defendant committed while on probation from a previous felony conviction in October 2018.  Clearly, mere moral restraint has no effect on his actions.

Lastly, the defendant faces a severe penalty if convicted.  The converted drug weight here under the Sentencing Guidelines is approximately 9500 kilograms, resulting in an offense level of 32.  With additional testing, that number may be much higher.  With his criminal history and with these drug weights, the defendant faces a guidelines range of approximately twenty *years* in prison.  With additional superseding charges, the defendant faces potential mandatory minimums of five years or ten years. That severe penalty—more severe than any penalty he has faced to date—creates a strong incentive for the defendant to flee immediately if released.  *See United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (strong evidence of guilt "makes it more likely that he will flee").

3. <u>The defendant cannot overcome the presumption that he is a danger to the community.</u>

The defendant carried a firearm in his backpack at the time of his arrest.  The defendant is prohibited from possessing any firearm, let alone a "ghost gun" that is made from parts and designed to be untraceable.  The gun alone shows a danger to the community, particularly since it was possessed by

someone who is no stranger to violence.  In 2020, police responded to an incident in the Tenderloin where the defendant allegedly chased another man down the street and slashed him with a machete; the defendant had his probation revoked in lieu of filing additional charges.

Finally, there is the danger caused by the sheer astonishing quantity of drugs in his possession. Although all controlled substances are dangerous, fentanyl is particularly so.  Just two milligrams of fentanyl can kill.  The defendant had *eight pounds*.  If the defendant is released and able to continue distributing any controlled substances—but particularly fentanyl—that poses a severe danger to the community and all those who come to the Tenderloin searching for fentanyl or who even inadvertently come into contact with the substance.  *See, e.g.*, *United States v. Alfonso Ramos*, No. 3:20-mj-71799-MAG-1 (EJD), 2020 U.S. Dist. LEXIS 244831, at *7 (N.D. Cal. Dec. 29, 2020) (sale of approximately 227 grams of fentanyl showed defendant posed a danger to the community because "[f]entanyl is among the most dangerous and deadly illegal drugs").

## V.     CONCLUSION

The defendant cannot overcome the presumption that there are no conditions that will reasonably assure his appearance at court proceedings or ensure the safety of the community.  The Court should order the defendant detained pending trial.

DATED:  March 23, 2023                                          Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

*/s/ George O. Hageman*_____
GEORGE O. HAGEMAN
Assistant United States Attorney